IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ROLAND F. KUSI, | § § § | |
| Petitioner, | § § | |
| v. | § § | CAUSE NO. EP-25-CV-527-KC |
| KRISTI NOEM et al., | § § § | |
| Respondents. | § § | |

### ORDER

On this day, the Court considered Roland F. Kusi's Verified Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

**I.   BACKGROUND**

This case involves Kusi's challenge to Respondents' decision to detain him in immigration custody without a bond hearing. The following facts are derived from the allegations in the Petition, the Response, ECF No. 5, the Reply, ECF No. 6, and documentary evidence submitted by the parties.

    **A.   Arrival in the United States & Immigration Proceedings**

Kusi is a citizen of Cameroon who entered the United States without inspection on November 1 or 7, 2022. Pet. ¶¶ 2, 63; *id.* Ex. A ("Notice to Appear"). He was served with a Notice to Appear on November 7.[1] *See* Notice to Appear. He was then released on his own recognizance. *See* Resp. 2; *id.* Ex. B ("Form I-831") 3, ECF No. 5-2.

---

[1] Respondents state that "on the same day [Kusi] unlawfully entered the United States, a DHS officer apprehended him, processed him, and in the exercise of discretion, served him with an NTA charging him as inadmissible to the United States as an alien who had not been admitted or paroled." Resp. 4; *accord* Resp. 3, 4. In reply, Kusi argues that the Form I-831 reflects that he entered on November 1, 2022, but

On April 29, 2024, an Immigration Judge ("IJ") denied Kusi's application for asylum and ordered him removed to Cameroon. Resp. Ex. A ("IJ Decision"), ECF No. 5-1; *see also* Pet. ¶ 7. Kusi timely appealed the IJ's decision, and this appeal remains pending. Pet. ¶ 7.

At some point after he entered the United States, Kusi met Ambei Mbah, a United States citizen, and the two were married on October 26, 2024. *Id.* ¶¶ 2, 64, *id.* Ex. B ("Marriage Certificate"). His wife is enlisted in the U.S. Army National Guard. Pet. ¶¶ 2, 64; *id.* Ex. C ("Enlistment Document"). She filed an I-130 petition on behalf of Kusi with United States Citizenship and Immigration Services ("USCIS"). Pet. ¶¶ 3, 65. USCIS scheduled the I-130 interview for September 26, 2025, in Chicago, Illinois. *Id.* ¶¶ 4, 66; *id.* Ex. D ("I-130 Appointment Notice"). And on this date, USCIS approved the I-130 petition. Pet. ¶¶ 5, 67; *id.* Ex. E ("I-130 Approval Notice").

However, immediately after approval, Immigration and Customs Enforcement ("ICE") officers arrested and detained Kusi. Pet. ¶¶ 5, 68. Kusi was then transported to El Paso, Texas, where he is currently detained at the Camp East Montana facility in Fort Bliss, El Paso, Texas. *Id.* ¶¶ 6, 68.

Kusi requested a bond hearing, but the Immigration Judge ("IJ") denied his request, stating that he did not have jurisdiction pursuant to the BIA decision in *Matter of Yajure Hurtado*. *Id.* ¶¶ 7, 69–70; *id.* Ex. F ("IJ Order"). Kusi has appealed this denial to the BIA. Pet. ¶¶ 6, 71; *id.* Ex. G ("Appeal Filing Receipt"). Kusi's continued detention prevents him from completing the steps necessary to finalize his adjustment to lawful permanent resident status. Pet. ¶ 10.

---

was apprehended and issued an NTA on November 7. Reply 6–8. The Court need not resolve this factual dispute because, even assuming that Kusi was apprehended on the same day he entered the country, this fact is immaterial to Kusi's due process claim, which is based on the liberty interest he obtained upon his release from custody. And Respondents admit that Kusi was released on his own recognizance. *See* Resp. 2

### B.  Procedural History

On November 6, 2025, Kusi filed a Petition for a Writ of Habeas Corpus, asking the Court to order a bond hearing before an IJ.  *Id.* at 30.  Respondents then filed their Response.  And Kusi filed a Reply, in which he requested that the Court order his release as a preferred alternative to ordering a bond hearing.  Reply 13–14.

To the extent there are any material factual disputes, the Court resolves them in Respondents' favor.  Therefore, it is unnecessary to hold a hearing.  *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.  DISCUSSION

Kusi argues that his detention violates (1) the Immigration and Nationality Act ("INA"), (2) the Administrative Procedure Act ("APA"), and (3) his right to due process under the Fifth Amendment.  Pet. ¶¶ 28–81.

Respondents make three main arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Kusi is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b); and (3) Kusi's as applied due process challenge fails.  Resp. 1–2.

This Court recently decided several petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b).  *See, e.g.*, *Martinez v. Noem* ("*Martinez I*"), No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at

*5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court has already addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A.  Jurisdiction

Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(g) and 1252(b)(9). Resp. 11–12. Respondents appear to attempt to bolster their § 1252(b)(9) argument through an appeal to §1225(b)(4). *Id.* The Court already rejected essentially the same arguments. *See Erazo Rojas v. Noem,* No. 3:25-cv-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025) (rejecting § 1225(b)(4) arguments); *Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). In their briefing, Respondents fail to distinguish those prior jurisdictional analyses. Resp. 11–12.

Therefore, the Court finds that it has jurisdiction to consider Kusi's challenge to his detention.

### B.  Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Kusi falls within it.[2] Pet. ¶¶ 28–51; Resp. 5–11. Recently, courts across the country have held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new

---

[2] Respondents emphasize that they claim to detain Kusi under § 1225(b)(1) and not § 1225(b)(2). Resp. 3–5. Regardless, the Court expresses no opinion on the merits of Respondents' interpretation of the INA's detention provisions, confining its holding to due process grounds.

4

interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

The Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Kusi is entitled to due process and succeeds in his as-applied challenge.[3]

### C.     Procedural Due Process

Respondents argue that Kusi "has not raised any colorable claim that his mandatory detention under § 1225(b)(1)(A)(iii)(II) [sic] is unconstitutional as applied to him."[4]  Resp. 1–2. They argue that, even as a matter of due process, Kusi "is not entitled to more process than what Congress provided [him] by statute." *Id.* at 13.  This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).  *See id.* at 8–9.  The Court has already rejected such a reading and does so again here.  *See Santiago*, 2025 WL 2792588, at *7–10; *Lopez-Arevelo*, 2025 WL 2691828, at *7–10.

Respondents also appear to argue that Kusi is receiving sufficient due process because he is in full removal proceedings, where "constitutional protections are built in[]." Resp. 13. However, the process Kusi has received in relation to his removal is entirely distinct from the process he has received in relation to his detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8,

---

[3] Therefore, the Court need not consider Kusi's APA claim, nor Respondents' argument for severance or dismissal because of Kusi's failure to pay the filing fee for non-habeas claims.  *See* Resp. 1 n.2.

[4] The mandatory detention provision actually appears at § 1225(b)(1)(A)(iii)(IV).

5

2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

### 1. Private Interest

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that Kusi does not acquire a liberty interest until his detention becomes unreasonably prolonged. Resp. 2, 14. However, one's physical freedom is a paramount liberty interest, secured not just by statute but by the Constitution. *Hamdi*, 542 U.S. at 529. This liberty interest applies to noncitizens, although to varying degrees. *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citation omitted).

Therefore, this Court has already held that noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status. *Martinez I*, 2025 WL 2965859, at *4. And other district courts have done the same. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL

2688541, at *1, 10 (D. Me. Sept. 22, 2025). An even greater weight of authority holds that "once released from immigration custody, noncitizens acquire 'a protectable liberty interest in remaining out of custody on bond.'" *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases)).

Kusi has been living in this country since 2022 so "it cannot be denied that [he] was 'already in the country.'" *See Martinez v. Hyde*, 2025 WL 2084238, at *8 (quotations omitted). And a few days after his initial entry into the United States, ICE released Kusi on his own recognizance. *See* Resp. 2; Form I-831, at 3. There is no indication that Kusi failed to comply with any conditions of his release. *See generally* Pet.; Resp. And, although an IJ denied Kusi's application for asylum and ordered him removed in April 2024, this decision was timely appealed, and Kusi's removal order has been stayed. Pet. ¶ 7.

Significantly, while released, Kusi met and married his wife, a United States citizen and member of the U.S. Army National Guard. *Id.* ¶¶ 2–3, 64–65; *see* Marriage Certificate; Enlistment Document. She then filed an I-130 petition on Kusi's behalf, which USCIS approved on September 26, 2025. Pet. ¶¶ 3–5, 65–67; *see* I-130 Appointment Notice; I-130 Approval Notice. This approval allows Kusi to adjust his status to lawful permanent resident status. Pet. ¶ 10 & n.1. However, his continued detention prevents him from completing the steps necessary to finalize his adjustment of status, including leaving and returning to the United States. *Id.*

Respondents argue that Kusi has no interest in his release because he "has no claim to any lawful status in the United States that would permit her [sic] to reside lawfully in the United States upon release." Resp. 2. This appears to be a boilerplate sentence that Respondents have included in many of their responses to habeas petitions before this Court. But its inclusion here makes no sense. Kusi has a claim to lawful status upon his release—his wife's I-130 petition has

7

been approved, and he is now permitted to adjust his status to lawful permanent resident. Respondents do not deny this—nor, indeed, do they even acknowledge it. *See generally* Resp.

Thus, Kusi's already strong interest in being free from detention, *cf. Santiago*, 2025 WL 2792588, at *10, is bolstered by his additional interest in pursuing adjustment of status.

Therefore, the first *Mathews* factor weighs in favor of Kusi.

### 2. Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Here, detaining Kusi without holding a bond hearing creates a substantial risk that he may be erroneously deprived of his liberty. Without an individualized determination, it cannot be said that detention is warranted in his case. This risk can be easily ameliorated through a bond hearing. Indeed, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Under "decades of DHS's own practices" prior to 2025, noncitizens "who entered without inspection" and were later arrested, just like Kusi, received bond hearings. *Chogllo Chafla*, 2025 WL 2688541, at *8 (citations omitted). This is precisely the type of proceeding that would give Kusi an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty.

Respondents suggest that it is better for Kusi that he is detained because his underlying relief application will be heard "more expeditiously on the detained docket than the non-detained docket." Resp. 13. This appears to be another instance of Respondents copying and pasting portions of other briefs that hardly pertain to the issues here. Kusi's asylum application has already been adjudicated by an IJ and is on appeal with the BIA. And his wife's I-130 petition for him has been approved. Again, his detention is stymieing his ability to complete the process of becoming a lawful permanent resident. In no way does it expedite his case.

Therefore, the second *Mathews* factor weighs in favor of Kusi.

### 3. Government's Interest

Respondents only identify their general interest in enforcing immigration laws as their basis for seeking continued detention without a bond hearing. *See* Resp. 3. But again, assuming Respondents' interpretation of the statute is correct, Kusi's constitutional interest in his liberty exists above and apart from the INA. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted). Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. But the decision to release Kusi on his own recognizance more than three years ago, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018)). His approved I-130 petition is indicative of the same. *Cf. Santiago*, 2025 WL 2792588, at *13. And in any event, if conditions have changed, any new concerns would be squarely addressed through a bond hearing. Thus, the third *Matthews* factor also weighs in favor of Kusi.

9

Because all *Mathews* factors support Kusi's position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, he is entitled to a bond hearing. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

### D.     Scope of Relief

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[5] *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner. *See, e.g.*, *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court follows this consensus and orders the same remedy here.

### III.    CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, <u>**on or before December 4, 2025**</u>, Respondents shall either: (1) provide Kusi with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of

---

[5] Respondents argue that "the only relief available to Petitioner through habeas is release from custody." Resp. 2. The Court has already rejected this argument, *Lala Barros v. Noem*, No. 3:25-cv-488-KC, 2025 WL 3154059, at *5 n.1 (W.D. Tex. Nov. 10, 2025), and does so here for the same reasons.

dangerousness or flight risk, Kusi's continued detention; or (2) release Kusi from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before December 4, 2025**, Respondents shall **FILE** notice informing the Court whether Kusi has been released from custody. If Kusi has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the December 4, 2025, deadlines.**

**SO ORDERED**.

**SIGNED** this 25th day of November, 2025.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE